R. L. GIBSON & BROTHER, Plaintiffs and Appellants, v. M. R. JENKINS, Defendant and Appellant.

Kansas City Court of Appeals, December 1, 1902.

1. **Account: CONTINUOUS OPEN: LIMITATIONS.** If it is fairly inferable from the conduct of the party that the whole account was to be regarded as one, as in the case of merchants' accounts against customers, none of the items are barred by the statute of limitation unless they all are.

2. **Referees: FILING EXCEPTIONS TO REPORT: TIME OF.** Exceptions to the report of a referee are required by the statute to be filed within four days after the filing of the report, and this means four term days. So where the referee's report was filed on the last day of the term, the parties would have until the fourth day of the next term to file exceptions.

3. ——: REPORT OF: EXCEPTIONS: POWERS OF COURT: APPELLATE PRACTICE. Where a case is one for compulsory reference, the court can reject the report of the referee and make its own findings, and the exceptions in the appellate court must be to the action of the court and not to the report.

4. Pleading: GENERAL DENIAL: EVIDENCE: INSTRUCTION. Under a general denial, the defendant may prove any fact which goes to show that the plaintiff never had any cause of action, and if inadmissible evidence is admitted without objection, the plaintiff can not object to instructions submitting issues so raised.

5. Contracts: IMMORAL: PLEADING: EVIDENCE. Where the pleading alleges a contract and the answer is a general denial and the contract itself shows no illegality on its face, the court can not consider an unpleaded defense even though it develop in the evidence.

6. Trial Practice: DIFFERENT COUNTS: ONE JUDGMENT. A petition for an accounting contained two counts. The court made a separate finding on each count and then entered one general judgment. *Held*, harmless in this cause, however hurtful it may be in other cases.

7. Accounting: INTEREST: HARMLESS ERROR. In an accounting, where there are mutual accounts on each side, an error, if any, in failing to allow the parties interest, is harmless, especially where the complaining party has a judgment rendered against him.

ON REHEARING.

8. Contracts: IMMORAL: PLEADING: EVIDENCE. Where the petition counts on a contract fair on its face and the answer is a general denial, and evidence tending to establish a defense that is *new matter* is without objection admitted, there is no waiver of the failure to plead the new matter. Such waiver occurs only where the unpleaded defense developed by the admitted testimony is not new matter. (Cases considered.)

Appeal from Linn Circuit Court.—*Hon. John P. Butler,* Judge.

REMANDED *(with directions).*

*A. W. Mullins* and *Harry K. West* for plaintiffs.

(1) The court erred in granting defendant thirty days within which to file his exceptions to the report of the referee. R. S. 1899, sec. 714. Maloney v. Rail-

road, 122 Mo. 106. It is not contended that the court may not, on its own motion, set aside a referee's report without the filing of any exceptions. But the action of the court in this case is not based upon its own motion but upon defendant's exceptions. Defendant's exceptions were filed out of time and in vacation and therefore formed no basis for the court's action. Moreover, the statute contemplates that the exceptions, if any, shall be speedily determined. To permit the trial court to grant one of the parties thirty days within which to file exceptions; to allow such exceptions to be filed in vacation, and to continue the case to another term so that the exceptions may be thus filed in disregard of the statute, is the exercise of arbitrary power which can not be approved. (2) The court erred in holding that plaintiffs' account, including the weighing, was not a running account. Ring v. Jamison, 66 Mo. 424; Chadwick v. Chadwick, 115 Mo. 581; Nedvidek v. Meyer, 46 Mo. 600; Ittner v. Association, 97 Mo. 567; McWilliams v. Allen, 45 Mo. 573. (3) The rule is now firmly established in this State that when there is nothing on the face of the petition or on the face of the contract sued upon which indicates that the contract sued upon is illegal or immoral, the facts constituting the illegality or immorality constitute an affirmative defense which must be pleaded. St. Louis A. and M. Ass'n v. Delano, 108 Mo. 217; McDearmott v. Sedgwick, 140 Mo. 172; Musser v. Adler, 86 Mo. 445; Moore v. Ringo, 82 Mo. 468; Sybert v. Jones, 19 Mo. 86; George v. Williams, 58 Mo. App. 138.

*Wilson & Clapp* for defendant.

(1) No court will lend its aid to one who founds his cause of action upon an immoral or illegal act. Hamilton v. Scull, 25 Mo. 165; Sumner v. Summers, 54 Mo. 340; Kitchen v. Greenabaum, 61 Mo. 110; Atlee v. Fink, 75 Mo. 100; Attaway v. Bank, 93 Mo. 485; Sprague v. Rooney, 104 Mo. 360; McDearmott v. Sedgwick, 140 Mo. 172; Haggerty v. Manufacturing Co., 143

Mo. 238; Tyler v. Larimore, 19 Mo. App. 445; Suits v. Taylor, 20 Mo. App. 166; Parson v. Randolph, 21 Mo. App. 353; Carter v. Shotwell, 42 Mo. App. 663; Board of Trade v. Brady, 78 Mo. App. 585. (2) That the contract sued on was immoral and illegal is disclosed by the testimony of R. L. Gibson. (3) Where evidence is admitted without objection, as if competent under a general denial, or as if specially pleaded, the defendant should not be prejudiced by the fact that the evidence was not competent under a general denial, or that it had not been specially pleaded. Stewart v. Goodrich, 9 Mo. App. 125; Carter v. Shotwell, 42 Mo. App. 663; Madison v. Railway, 60 Mo. App. 608. (4) This case involved the examination of long accounts on both sides. The court might lawfully direct a compulsory reference. Sec. 698, R. S. 1899; Wentzville Tobacco Co. v. Walker, 123 Mo. 662; Edwardson v. Garnhart, 56 Mo. 81; Smith v. Haley, 41 Mo. App. 611; Ice Co. v. Tamm, 138 Mo. 385; Francisco v. Rowland, 14 Mo. App. 600; Johnson v. Blell, 61 Mo. App. 37; Raines v. Lumpee, 80 Mo. App. 203. (5) Where the court may lawfully direct a compulsory reference it may act upon the evidence reported by the referee and find therefrom different conclusions of fact. Tobacco Co. v. Walker, 123 Mo. 662; Walker v. Hurlstone, 92 Mo. 327; Hardware Co. v. Walter, 91 Mo. 484; Bond v. Finley, 74 Mo. App. 22; Raines v. Lumpee, 80 Mo. App. 203; Johnson v. Ewald, 82 Mo. App. 276; Utley v. Hill, 155 Mo. 232. (6) In cases of compulsory reference the appellate court has the same power to review the findings of fact made by the referee or the court upon the evidence that it has in equity cases. Cahill v. McCornish, 74 Mo. App. 609; Raines v. Lumpee, 80 Mo. App. 203; Johnson v. Ewald, 82 Mo. App. 276; Small v. Hatch, 151 Mo. 300; Williams v. Railway, 153 Mo. 487. (7) It is immaterial whether the exceptions of defendant to the referee's report were filed in time or not. This being a compulsory reference case the report of the referee was advisory only, and the circuit court had the right of its own motion to change,

modify and correct the findings of the referee. Smith v. Paris, 70 Mo. 615. (8) The defendant had four days in term after the report was filed in which to file his exceptions to the report. The report being filed on the last day of the August adjourned term, the defendant had the first four days of the next term in which to file his exceptions. Sec. 714, R. S. 1899. (9) Where a petition contains two causes of action, and the answer two or more separate counterclaims, a general judgment for the plaintiff is erroneous, and is ground for motion in arrest. McHoney v. Ins. Co., 44 Mo. App. 426; Com. Co. v. Railroad, 80 Mo. App. 164; Club v. Findlay, 53 Mo. App. 256.

BROADDUS, J.—The plaintiffs sue as partners. The original petition was filed May 5, 1898. The amended petition on which the cause was tried was filed at the December term of said court for the same year. The cause was referred to a referee whose finding was duly reported to the court, to which exceptions were filed by both parties. To the action of the court upon said report and the judgment in the case both parties have appealed, filing a joint abstract of the case. Both petition and answer are quite lengthy and to each is attached a long account. Many questions have been raised which we will endeavor to examine.

Plaintiffs' amended petition is to the effect that at divers dates, beginning on the second day of October and ending on the first day of January, 1894, they sold to defendant goods and merchandise and did weighing on their scales for him in value to the amount of $437.22; that about October 5, 1892, they presented this account, except what accrued afterwards, to the defendant for payment, said account amounting at that time to $419.32; that owing to the fact that both plaintiff and defendant were embarrassed financially, caused by losses sustained by the burning of their property at Browning, Missouri, on April 27, 1892, it was agreed between them that plaintiff should borrow $225 from the Browning Savings Bank and that defendant would

sign the note to secure the loan of the bank, as security, which he would ultimately pay, and which, when paid by him, was to be applied as a credit upon plaintiffs' said account; that such note was given and after having been renewed was finally paid by defendant on the eighth day of February, 1898, at which time, with accumulated interest, it amounted to $277.25; and that defendant is entitled to the credit of the amount so paid on said account.

The second count is substantially as follows: That on April 27, 1892, plaintiffs owned at Browning, Missouri, goods, wares, lumber and implements to the amount in value of $21,500 which was set fire to and destroyed by Alva C. Ross at the instigation of one William P. Taylor; that defendant owned property of the value of $1,500 which was also destroyed at the same time by the same agency; that plaintiffs and defendant, on or about October 10, 1892, entered into an agreement by the terms of which plaintiffs were to institute an action by attachment against said William P. Taylor to recover judgment for the loss they had sustained by said fire and that in such action plaintiffs would bear one-half of the costs and expenses incurred and the defendant would bear the other half of the same; that the proceeds of the litigation were to be divided equally between plaintiffs and defendant; that the suit was instituted and proper judgment obtained against said Taylor for $15,000; that execution upon said judgment was issued and levied upon certain real estate of said Taylor which was sold and bid in by defendant to be held in trust for plaintiffs and himself in pursuance of said agreement; that defendant has sold said land and realized therefrom the sum of $2,250 and has collected by way of rent on said property $241, making the total amount received by defendant under said agreement the sum of $2,491, one-half of which belonged to plaintiffs; that the defendant has paid out for costs and expenses in said suit the sum of $967.88, while the plaintiffs have paid out in the same behalf $370.70, making defendant's expenses exceed plaintiffs'

in the sum of $597, which deducted from said amount recovered as aforesaid leaves a balance of $1,893.90, of which one-half is due from defendant to the plaintiffs.

A summary of the defendant's answer, relevant to the matter in dispute, is about as follows: A general denial, and allegations that it is not true that he entered into the agreement to borrow the $225 from the Browning bank, as stated by plaintiffs; that at that time he was not indebted to plaintiffs but that, on the contrary, they were indebted to him; that at the time of said fire plaintiffs owed the German-American Bank, of Fort Madison, with accrued interest, $285 on a note which was payable to himself and which had been indorsed by him to said bank; that plaintiffs failing to pay said bank, it sued both plaintiffs and defendant and that the former having money enough to pay a part only on said note borrowed $225 from the Browning bank to pay the remainder, giving the $225 note mentioned in plaintiffs' petition with this defendant as security; and that said note was renewed and afterwards paid by defendant, at which time it amounted with accrued interest to $277.55. Defendant then further alleges that the claim in plaintiffs' account of date December 23, 1893, for $3 for pipe-tongs, is fictitious, and that the claim dated July 17, 1893, for $10 for Champion Steel cart was not sold and delivered to him but to the Jenkins Hayrake and Stacker Company. He claims next, by way of set-off, a note dated January 16, 1890, for $170 due in twelve months with interest from maturity, which was signed by one of the plaintiffs but which is averred to be the debt of both. He also sets up an account stated, of date the fourteenth day of March, 1892, for $170.90. There is another allegation in defendant's said answer setting up a counterclaim against plaintiffs, but as it was disallowed and no error assigned in that regard, it will not be inserted here.

The referee found as follows: That the items of merchandise charged to defendant in plaintiffs' petition

commencing October 2, 1890, and ending January 1, 1894, is sustained by the evidence, except item for Champion Steel cart of date July 17, 1893, and $3 for pipe-tongs dated December 23, 1893. Second, that defendant realized from property acquired in the litigation against Wm. P. Taylor the sum of $2,250. Third, that the $170 note set up by defendant was the individual note of R. L. Gibson, and it was not allowed. Fourth, that the note set out in the petition and alleged to be the note of defendant was the note of the plaintiffs and that they be charged with it. Fifth, that the $50 order was due from plaintiffs to defendant and the latter was given credit for the same. Sixth, that under the evidence the claim of defendant for money loaned to and paid out for the Jenkins Hayrake and Stacker Company was not a matter for adjudication in the case and he so reported. He also found that defendant collected rents on the Taylor property in the sum of $182.75; and that the $170.96 set out in defendant's answer is due defendant and credits defendant with it.

The court overruled the exceptions to the report of the referee, set the same aside, examined the evidence, and made an independent and different finding. In this finding by the court all plaintiffs' accounts except that for weighing were disallowed. The court gave the following reason for its finding and ruling: "The court further finds that plaintiffs' accounts for lumber and other articles sold and delivered to defendant by plaintiffs between the second day of October, 1890, and the fifth day of May, 1892, amounting to $418.62, and the weighing account beginning on the twenty-seventh day of December, 1892, and ending on July 1, 1894, amounting to the sum of $5.60, did not arise out of the same contract express or implied, and that the latter did not attach to and become a part of the lumber account so as to save the bar of the statute of limitations."

The evidence was to the effect that the plaintiffs were engaged in the lumber business and were also engaged at the same time and place in weighing for customers; that when the fire occurred in 1892, de-

stroying plaintiffs' property, they discontinued the lumber business; that the lumber account terminated in May, and the weighing account began in December, 1892, and continued until January 1, 1894.

We can not agree with the learned judge who tried the cause that the item in the account for weighing did not attach to the other part of the account including the items for lumber because they did not arise out of the same contract express or implied. In our opinion, that is not the proper test. The different articles in the account may have been obtained under separate contracts. A customer buys from his merchant a certain article one day and at a given price, and on the next day he purchases another and different article or, perhaps, the same article at another and different agreed price. The purchase of one day would not be under the contract of the purchase for the other day, yet it would not do to say that they were not a part of the same running account. Had the weighing account commenced the very next day after the appearance of the last item in the account for lumber and other articles, could it be said that the two did not constitute one account in the contemplation of the parties? The whole made up one unsettled demand upon which the plaintiffs had one cause of action only. The fact alone that there was a difference of six months time between the last item in the one and the first item in the beginning of the other, can make no difference in the matter. The facts of the case show that the parties to the suit occupied the most confidential relations to each other. In October, 1892, the agreement was entered into for the plaintiffs to bring the suit against William P. Taylor for destroying their property by fire. The suit was to be for the benefit of both parties, out of which were to grow mutual accounts for costs and expenditures which, of course, were to be kept by each party. These mutual accounts began between the date of the last item in the so-called lumber account and the date of the first item in the weighing account. The most reasonable inference to be gathered from this and other circumstances

is that the relation of debtor and creditor should continue to be evidenced by a continuous open account. Where "it is fairly inferable from the conduct of the parties, while the account was accruing, that the whole was to be regarded as one, as in case of a merchant's account against a customer, none of the items are barred by the statute unless all are." Ring v. Jamison Co., 66 Mo. 428; Chadwick v. Chadwick, 115 Mo. 581.

An account is nothing more than a statement showing the debits and credits existing between two or more persons. Anything that constitutes a debit or credit is properly a part of the account. The merchant while his business in the main is to sell his customers merchandise, may also loan him money, may hire him a horse, may lease him a house, go on a voyage to look after his business, or pay his note at his request, for all which he may charge him in the same account for goods sold and delivered. That part of plaintiffs' account held to have been barred by the statute was practically admitted, with the exception of two items, and the weighing account was proved, and the former should not have been disallowed under a strained construction of the law.

But plaintiffs contend that defendant's exceptions to the referee's report were not filed in time and therefore can not be considered. This is a misapprehension. The statute provides that exceptions to the reports of referees shall be filed within four term days. The report here was filed on the day of adjournment of the court, at which time defendant was given thirty days to file his exceptions. He filed them in vacation and before the first day of the next term of court, and within the thirty days. Under the statute he would have had time to have filed them during the fourth day of said coming term. The plaintiffs cite several cases to support their position, among them being Rienecke v. Jod, 56 Mo. 386. In that case the report of the referee was filed on the seventeenth day of October, 1871, and the defendant filed his exceptions on the eleventh day of November, next thereafter. The court held that they

were not filed in time as the law required them to be filed within four days in term after the report was filed. In Gaston v. Kellog the language of the court is that "the bill of exceptions does not show that the exceptions were filed within four days after the report of the referee was filed." This, however, is somewhat misleading, as the opinion does not show whether the time was four term days or otherwise. But we must presume that the court meant four term days, inasmuch as the decision is predicated upon that of Rienecke v. Jod, supra.

In Maloney v. Railroad, 122 Mo. 106, the court was passing on a motion for new trial and in arrest of judgment. The statute regulating the filing of such motion is substantially different from the one under consideration and has no application here. However that may be, it was a case for compulsory reference and the court had the right to reject the report of the referee, as it did, and to make its own finding. Therefore, the exceptions must be to the action of the court and not to the report of the referee that we are to consider. Williams v. Railway, 153 Mo. 487; Small v. Hatch, 151 Mo. 300; Rains v. Lumpee, 80 Mo. App. 203.

The defendant contends that the contract sued on is immoral and illegal as disclosed by the testimony and that therefore the court was not authorized to enforce it. As a general proposition, this is true. The evidence discloses the fact that the plaintiffs were insolvent at the time the agreement was entered into between the parties by which the defendant was to take the deed to the property bid in at the execution sale in the name of the defendant to be by him held in trust for the one-half interest and for the use and benefit of the plaintiffs. Under the statute this was void as against creditors. The illegality of the contract was not pleaded specifically in the answer, but it is claimed that its illegality was put in issue by a general denial. In a suit on a contract made in violation of the statute against letting premises for bawdy-house purposes it was held under a general denial of the answer that parol

evidence was admissible to show the purposes for which the premises were let. Sprague v. Rooney, 104 Mo. 349. Whether evidence that an agreement was made in fraud of creditors is admissible when the petition alleges the agreement and seeks the enforcement thereof and the answer is a general denial, was a query put by the judge who rendered the opinion of the court in Carter v. Shotwell, 42 Mo. App. 663. However, the court held that the better rule is, when fraud is relied on as a defense then it should be pleaded specifically. It was also held by the court that as evidence challenging the good faith of the transaction was admitted without objection, that instructions offered making fraud an issue ought to have been given. Under a general denial the defendant may prove any fact which goes to show that the plaintiff never had any cause of action, and if plaintiff without objection permits defendant's evidence, inadmissible under the pleadings, he can not object to an instruction submitting the issue so raised to the jury. Madison v. Railway, 60 Mo. App. 600.

But it appears that the plaintiffs did object to the introduction of evidence impeaching the contract in question as fraudulent against creditors, but their objection was overruled by the referees, consequently they are not concluded on the ground that they waived their rights in that respect. In the case of St. Louis Agricultural Ass'n v. Delano, 108 Mo. 217, we find a ruling in conflict with that laid down in Sprague v. Rooney, supra. In speaking of the pleadings therein Judge SHERWOOD said:

"There is nothing in the face of the petition herein which indicates any other than a valid contract between the plaintiff and the defendants, and when this is the case the rule is that if the contract is to be invalidated by reason of some extrinsic matter, such matter must be pleaded in order that it be made issuable at the trial so that it may be considered on appeal. In this case the answer was simply a general denial and on this point the following authorities apply." He then

cites: Sybert v. Jones, 19 Mo. 86; Moore v. Ringo, 82 Mo. 468; Musser v. Adler, 86 Mo. 445; Cummeskey v. Williams, 20 Mo. App. 606. Not content with what he had already said, and the authorities he had cited to sustain himself, he finishes by saying: "Nor will any appellate court consider an unpleaded defense." In McDearmott v. Sedgwick, 140 Mo. 172, the case of Sprague v. Rooney, supra, was overruled as being in conflict with the weight of authority in this State; the rule laid down in St. Louis Ass'n v. Delano, supra, is approved; and attention is called to the distinction made by the court in Musser v. Adler, supra, between a case where the illegality or immorality of the contract appears on the face of the contract and where it does not. In the former instance the petition will be denied where it is based on such a contract; in the latter instance the defense should be clearly and distinctly stated.

From the foregoing it will be seen that the rule seems to be well settled that where a pleading is supported by a contract fair on its face, in order to challenge its legality the facts must be specifically pleaded.

The defendant further contends that the judgment should be reversed because there is one general judgment and not a separate judgment on each count. An examination of the judgment of the court will disclose that it made a separate finding on each item and then entered up a general judgment including all its findings. We can not see how the defendant could be prejudiced thereby, if it was error so to do, which we do not believe. There may be cases in which there should be separate findings and judgments on the different counts, so that the party defeated may not be prejudiced and that he may take the necessary course to correct that which he may deem hurtful and not be compelled to appeal from the whole case. This, however, is a case of accounting and it can make no difference whether there be a judgment on each count or one judgment for the whole, for the sum of both represent the difference between plaintiffs' and defendant's accounts, which was the object of the suit.

The further objection that the court committed error in not allowing defendant interest on the items of his account is not well taken. The court failed to give either party interest on the credits established; and as the plaintiffs obtained judgment we can not see how the defendant can complain inasmuch as if interest had been allowed to both the plaintiffs and the defendant the plaintiffs' judgment would have been greater than it is. And as the plaintiffs have not complained of this action of the court the judgment will not be disturbed for that reason.

We believe we have noticed all material errors.

The cause is affirmed against the defendant on his appeal and reversed on the appeal of the plaintiffs. The trial court is directed to set aside its former judgment and to enter up judgment for the plaintiffs, in addition to the sum of $271.47½ cents found due by the previous judgment, the further sum of $417.35, the amount of their lumber account, making a total of $688.82½ cents, with six per cent interest from the fifth day of May, 1898, until the date of rendition. All concur.

## ON REHEARING.

SMITH, P. J.—After the foregoing opinion was delivered, a rehearing of the case was granted, but a reargument and re-examination of it has not influenced a conviction in my mind that I should recede from the conclusion announced in that opinion.

It has been seen from a synopsis of the second count of the petition contained in said opinion that it it therein alleged that the plaintiffs and defendant entered into an agreement which was to the effect that the defendant would at the sale under the execution issued on the judgment against Taylor, bid in the land levied on and hold the title so acquired for the use and benefit of both plaintiffs and himself; and that if the latter sold the land he would divide the net proceeds arising therefrom—or, if not so sold then that the land

so acquired should be equally divided between them; that in pursuance of such agreements the said lands were bid in by defendant and subsequently sold by him whereby he realized a large sum of money which was subject to division and distribution between the parties to such agreement. The defendant answered this count by a general denial.

At the trial the plaintiff, M. R. Gibson, was called as a witness in behalf of the plaintiffs and testified to the facts, alleged in the said count of their petition. By his testimony the plaintiffs established a prima facie right to recover on their said second count. It is however true that after such prima facie case had been made out by his testimony in chief, that on cross-examination by the defendant he testified without the interposition of any objection thereto by the plaintiffs, that the latter at the time of their entering into said agreement with defendant were insolvent and indebted to Schrock in about three thousand dollars and that the title to the land so acquired by defendant was, as to plaintiffs' interest, vested in the defendant for the purpose of hindering and defrauding the said Schrock in the collection of his said debt. Testimony of the said witness was full and explicit as to the fraud and was received without objection.

After such testimony had been received as has been stated and near the close of such cross-examination the said witness was asked by defendant if he had not entered into said agreement with defendant to put the property that was to be bought in such shape that said Schrock could not reach it. To this question the plaintiffs objected on the ground that it was immaterial. This objection was by the court overruled and the witness was permitted to answer. No motion was made to strike from the record the testimony of the witness as to the fraudulent purpose of the agreement, nor did the objection made extend to it. There was no objection to the reception of such testimony or to any part of it that it was incompetent or inadmissible under the answer. Had the objection been sustained the case

here would not have been different, as abundant unquestioned testimony proving the fraud would have remained.

The question thus presented is whether or not the unobjected-to testimony disclosing the fraudulent purpose of the plaintiffs should have, in view of the state of the pleadings, been given any consideration by the trial court. The rule has been declared to be that when either party to a contract or transaction applies to a court for aid, if the plaintiff can not open his case without showing he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant. Hatch v. Hanson, 46 Mo. App. loc. cit. 329 and authorities there cited. The principle of public policy is *ex dolo malo non oritur actio.* No court will lend its aid to one who founds his cause of action upon an immoral or illegal act. Attaway v. Bank, 93 Mo. 485; Atlee v. Fink, 75 Mo. 102.

And so the rule may be said to be firmly established in this State to the effect that where there is nothing on the face of the petition or in that of the contract sued on which indicates that it—the contract—be illegal or immoral, the facts constituting the illegality or immorality to be available must be pleaded as an affirmative defense. Sybert v. Jones, 19 Mo. 86; Moore v. Ringo, 82 Mo. 468; Musser v. Adler, 86 Mo. 445; McDearmott v. Sedgwick, 140 Mo. 172; St. Louis Assn. v. Delano, 108 Mo. 217; Reese v. Garth, 36 Mo. App. 641; George & Lowe v. Williams, 58 Mo. App. 139; Schwartz Bros. Com. Co. v. Vanstone, 62 Mo. App. 241. If the defendant untruly denied the making of the agreement alleged in the second count of the plaintiffs' petition, that should not enable him to avail himself of the accidental fact of the illegality appearing in the testimony. It has been ruled here and elsewhere that an affirmative defense is of no avail if not pleaded, though the testimony disclose it. Schwartz v. Vanstone, supra; Reese v. Garth, supra; McDearmott v. Sedgwick, supra; Dinglidein v. Railroad, 9 Bosw. (N. Y.) 79. Or, as said in Musser v. Adler,

supra: "It is not enough that evidence may appear tending to establish facts which if pleaded would defeat a recovery."

It must be considered that the agreement alleged in said count of the petition was in every respect legal and valid. There is nothing on its face indicating any other than a valid and binding agreement between the parties thereto. If the defendant had desired to invalidate the agreement on the ground that it was entered into by the plaintiffs to hinder and defraud their creditors, instead of resting his defense on a mere denial of the allegations of the said count, he should have specially pleaded such extrinsic matter so that it could have been made issuable at the trial and later on considered on appeal. It follows, therefore, that the testimony of the plaintiff which on cross-examination disclosed that the agreement pleaded was entered into by the plaintiffs to hinder and defraud their creditors, was not available as a defense to the defendant under his answer and was and is entitled to no consideration.

But it is contended by the defendant that as the plaintiffs made no objection to the testimony disclosing the fraudulent purpose with which they entered into the agreement, that therefore such testimony should have been considered though the answer was but a general denial.

As I understand it, in cases like the present, where the evidence elicited by defendant and received on the trial without objection tends to establish a defense that is *new matter*, the plaintiffs by their failure to object to such testimony do not thereby waive the question of pleading, and render such testimony competent under the general denial as if specially pleaded by the answer. The rule in respect to waiver of the question of pleading is limited in its operation to these cases where the unobjected-to testimony tends to establish an unpleaded defense which is not new matter. There is nothing in Stewart v. Goodrich, 9 Mo. App. 125; Carter v. Shotwell, 42 Mo. App. 663 and Madison v. Rail-

way, 60 Mo. App. 608, that decides anything to the contrary.

If, however, these cases should be considered as holding that a plaintiff in a case like the present, where the unobjected-to testimony received establishes an un-unpleaded defense that is new matter, waives the question of pleading and thereby renders such testimony under a general denial as competent as if such new matter had been specially pleaded, then it is clear that such cases to that extent are out of harmony with Sybert v. Jones, supra, and the other cases following it which have been already cited.

I therefore conclude that the affirmative defense of fraud, which the unobjected-to testimony tended to establish, is not, under the general denial contained in the answer, entitled to any consideration in the determination of the issues arising in the case, and for that reason I concur in the result reached in the opinion referred to at the outset. *Broaddus* and *Ellison, JJ.,* concur.

