THE COMMERCIAL CLUB OF JOPLIN, Appellant, v. FRED M. DAVIS et al., Respondents.

Kansas City Court of Appeals, April 19, 1909.

1. **PRINCIPAL AND SURETY: Dual Agency: Illegal Taint: Defense.** Defendant was plaintiff's agent to buy certain property for it. He arranged also with the seller to receive a certain commission for effecting the sale and did receive such commission. *Held,* when sued by the plaintiff for such sum the fact that subsequent to the sale the plaintiff organized a project tainted with illegality to dispose of the property, would constitute no defense, since the tainted project was not in existence at the time of the contract with the seller, and this though the seller, and consequently the defendant, did not receive the money until after the tainted project was accomplished.

2. ———: ———: ———: ———: **Evidence.** *Held,* further, that plaintiff's right to recover could be sustained by evidence in no way relating to the unlawful purpose in the plan to dispose of the purchased land; and held, further, that though the seller and the defendant each knew the land was purchased for unlawful purposes, yet such fact would not defeat plaintiff's action, since the defendant has in his possession plaintiff's money without any reason existing why he should not return it.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. W. McAntire* for appellant.

(1)    The plaintiff in this case could prove its cause of action, and did prove its cause of action without it being necessary, or without it actually showing that any drawing whatever took place, and under such circumstances it is entitled to maintain its action. Michael v. Bacon, 49 Mo. 474; McDermott v. Sedgwick, 140 Mo. 182; St. L. Agr'l & Mech. Ass'n v. Delano, 108 Mo. 220.
(2)    The doctrine which dominates a trustee and prohibits him from receiving a secret profit, apples not only to trustees of technical or express trusts, but to all occupying a similar relation, whether cotenants, agents for hire, gratuitous agents, subagents, partners or employees of agents, and even to officious intermeddlers in the business of affairs or who having been employed in the affairs of another have acquired a knowledge of his property. Conn. Mut. Insurance Co. v. Smith, 117 Mo. 295; Eumann v. Reglar, 105 Mo. 682; Snyder v. Cowan, 50 Mo. App. 434; State ex rel. Jones v. Jones, 53 Mo. App. 218.    (3)    The defendant could not hold the money back that he obtained from the Granby Mining and Smelting Company, even if there had been any illegal acts, on the grounds that there was illegality in getting the money.  Bent v. Priest, 86 Mo. 487; Rozelle v. Beckmyer, 134 Mo. 380.  (4)  The defendants were liable for the reason that they had united themselves, the opposite character of buyer and seller, and made a secret profit.    South Joplin Land Co. v. Case, 104 Mo. 580; Suddath v. Gallagher, 126 Mo. 401; Thompson v. Greely, 107 Mo. 590; Life Insurance Co. v. Smith, 117 Mo. 295; Snyder v. Cowan, 120 Mo. 393; Harrison v. Craven, 188 Mo. 591.    (5) Where an agent in the course of his agency receives from a third person for his principal the proceeds of profits of an illegal contract, in the execution of performance of which the agent was in no wise a participant, the agent cannot defend the action by

which part of the property was received on the ground
of the illegality of the contract out of which it arose.
Fairbanks v. Pickering, 9 Pick. (Mass.) 93; Wilson v.
Owen, 30 Mich. 474; 15 A. & E. Ency. of Law, p. 1009.
(6) In this case the plaintiff is not seeking to enforce
any illegal contract, but is trying to recover the money
that its trustee and purchasing agent obtained as a secret
profit from the seller of the property, and we claim that
under these conditions the action will lie against the
defendants. Wright v. Stewart, 190 Fed. 905; Hall v.
Corcoran, 107 Mass. 256; Portsmouth Brewing Co. v.
Mudge, 64 N. H. 46; Bernard v. Taylor (Ore.), 18 L. R.
A. 859; Loomis v. People, 67 N. Y. 222. (7) The en-
forcing of an illegal contract and the ascertaining the
title to money growing out of it are distinct and separate.
So held by the Supreme Court of the United States, and
by various State courts. Brooks v. Martin, 30 Wall. 70;
McBair v. Gibb, 17 How. 232; Pullman Palace Car Co.
v. Transportation Co., 171 U. S. 151; Catts v. Phalen
& Morris, 2 How. 376; Phalen v. Clark, 50 Am. Dec.
253, 19 Conn. 421; Zimmerman v. Bidwell, 62 Mich.
205; Jones v. Innis, 37 Kan. 177. (8) The con-
tract of purchase and the authority to Davis was to
perform a legal act. Pom., Eq. Juris. (3 Ed.),
sec. 403; Thompson v. Thompson, 7 Ves. 470; Tenant
v. Elliott, 1 Bos. & P. 3; Turner v. Russell, 1 Bos. & P.
296.

*A. E. Spencer* for respondents.

(1) Appellant's contract of April 27, 1907, with
the landowner, was only an option contract, and appel-
lant acquired no title until delivery of deed on June 25,
1907. Dunaway v. Day, 163 Mo. 415; Barker v. Cutzer,
35 Kan. 459; Huggins v. Safford, 67 Mo. App. 469;
Glass v. Rowe, 103 Mo. 539; Ramsey v. West, 31 Mo.
App. 676; Benedict v. Lynch, 1 Johns. Ch. 370, 1 L. Ed.
175. (2) The scheme adopted by appellant to dispose
of the lots and thus raise the money to pay for the land

was a lottery, in violation of the law of the State. Siver v. Guarantee Investment Co., 183 Mo. 41; State v. Mumford, 73 Mo. 647; Emshwiler v. Tyner, 21 Ind. App. 347, 52 N. E. 459. (3)  Where lots of unequal value are sold at an equal price, and the distribution of the lots to the subscribers is determined by a drawing, the scheme is a lottery. Allebach v. Godshalk, 116 Pa. 329, 9 Atl. 444; Lynch v. Rosenthal, 144 Ind. 86, 42 N. E. 1103, 55 Am. St. Rep. 168, 31 L. R. A. 835; Seidenbender v. Charles, 4 S. & R. 151, 8 Am. Dec. 682; Guenther v. Dewein, 11 Iowa 133; Den ex dem. Wooden v. Shotwell, 24 N. J. L. 789. (4)  This unlawful lottery tainted the whole transaction, and plaintiff cannot recover. Kitchen v. Greenabaum, 61 Mo. 110; Roselle v. Bank, 141 Mo. 36; 25 Cyc., 1653, and cases cited.     Beach, Contracts, sec. 1459, p. 1903; McMullin v. Hoffman, 174 U. S. 631, 43 L. Ed. 1117; Banking Co., v. Lichtenstein, 10 Utah 338, 37 Pac. 574; Connor v. Black, 132 Mo. 150, 119 Mo. 126; Northrup v. Buffington, 171 Mass. 468, 51 N. E. 7; Parker v. Otis, 130 Cal. 322, 62 Pac. 571.

ELLISON J.—This action may be said to be founded on the misconduct of an agent amounting to a breach of trust.    The judgment was for the defendant in the trial court.

It appears that plaintiff is a duly organized corporation under article 11, chapter 12, Revised Statutes 1899, and that it is managed by a board of ten trustees; defendant was member of the corporation and one of the trustees.    The board appointed him, with others, as a committee to purchase for the organization a certain tract of land in Jasper county.    The purchase price was finally agreed upon at forty-five thousand dollars; but defendant, without plaintiff's knowledge, in breach of good faith with it, as its agent, had a secret understanding with the seller of the land that he was to be paid or

allowed by such seller a commission of eleven hundred and twenty-five dollars, which sum was paid to him on the consummation of the purchase by deed. On discovering this secret relation between these parties plaintiff demanded the money so received and upon defendant's refusal to pay, this action was brought.

The evidence showed that there was a written contract for the land set forth in a receipt dated April 27, 1907, for the first part of purchase money, which was $1,000, and that two days before that, when defendant was negotiating with the seller, he made the arrangement that he was to receive a commission of $2\frac{1}{2}$ per cent. The deed was made in June thereafter and that was the date when the seller actually paid such commission to defendant, amounting to eleven hundred and twenty-five dollars. It further appears that a few days after the purchase, viz. on the evening of May 1st, plaintiff's trustees adopted a plan whereby the lots into which a part of the land was to be divided should be disposed of by a lottery.

The defense is that the land was purchased for an unlawful purpose. It can be better understood by being set out in full. After a formal general denial, it proceeds:

"Further answering defendants state that the plaintiff unlawfully undertook to raise a fund of money by means of a lottery, and that said transaction, as hereafter stated, was unlawful and against public policy. That in pursuance of said unlawful scheme the plaintiff secured an option on the land mentioned in the petition and caused a portion thereof to be subdivided in lots, streets and alleys; that said lots were of various values, ranging from one hundred and fifty dollars ($150) to five hundred dollars ($500) each, and that in carrying out said lottery, the plaintiff sold said lots for the fixed price of three hundred dollars ($300) each, with the agreement then and there designed, and proposed by the plaintiff and against the objection of these defendants, that the said lots should be allotted to the several

purchasers, who had no right or opportunity to select the lots they or any one of them would purchase, but same were in fact allotted to them by means of a lottery, that is to say: The numbers of the lots were written on separate sheets of paper enclosed in envelopes and placed in a hat, while a similar process was followed with the names of the several purchasers for lots, which were placed in another hat, and then as an envelope was drawn from one hat, there was also one drawn from the other hat, and the number of the lot so drawn was taken as the number of the lot to be awarded to the person whose name was drawn from the envelope from the other hat at that time. That the said transaction constituted an unlawful lottery and is the same transaction mentioned in the petition, and that same, and every part thereof, was and is wholly void and against public policy, and gives the plaintiff no rights in the premises.

Wherefore, having fully answered, defendants ask for judgment in their favor with cost."

We may concede that the lottery plan of disposing of the land adopted by plaintiff was unlawful, yet in light of the evidence, we do not understand how that can protect defendant from the demand plaintiff makes on him. The evidence shows that when plaintiff purchased the land through the agency of defendant and when defendant entered into the agreemnt with the seller for a commission, the lottery plan was not in contemplation. In other words, when defendant committed the injury upon plaintiff by his breach of trust, he was not engaged in buying for plaintiff land which was to be used for an unlawful purpose. The evidence shows that such purpose was not formed by plaintiff until after the purchase and after other methods of getting the money needed had. failed. It is true the money was not paid to defendant by the seller until after the unlawful plan of disposing of the property had been formed; but that should not affect a decision of the question, for defendant's obligation to pay plaintiff the amount he was

secretly getting from the seller arose at the time that he increased the price of the land to plaintiff by the amount of his secret commission, for that was the effect of his conduct. If he had not exacted the commission the seller, of course, would have sold the land to plaintiff for that much less and plaintiff would not have contracted to pay as much, by that amount, as it did.

Furthermore, it may be said in this connection, that this action against defendant may be sustained by evidence in no way relating to the unlawful purpose in the plan of disposing of it. It is disconnected from that plan. When that is the case the taint of illegality does not attach to plaintiff's action. [Michael v. Bacon, 49 Mo. 474; McDearmott v. Sedgwick, 140 Mo. 172; St. Louis.Ass'n v. Delano, 108 Mo. 217; Hall v. Corcoran, 107 Mass. l. c. 256.]

So it may also be said that though plaintiff and the seller and the defendant had each known the land was being purchased for a lottery, yet that matter is at an end and it has no direct connection with the present action. It is not an action to enforce an unlawful contract or for damages for a breach of such a contract. Defendant has plaintiff's money in his possession and no reason can exist why he should not be compelled to return it. [Hall v. Corcoran, 107 Mass. 251; Portsmouth Brewing Co. v. Mudge, 68 N. H. 462, 44 Atl. 600; 1 Pomeroy's Eq. Jur., sec. 403.]

If it be suggested that we are going too far in saying that the money of one of the parties is found in defendant's possession, we answer that in legal and actual effect defendant's conduct amounted to this: That he received of plaintiff money which he represented the seller asked for the property and which he was to pay to the seller. He went to the seller with the money, but paid him $1125 less than he got of plaintiff and kept that sum himself. While the transaction did not occur in that way, yet that was the effect of it and it justifies

us in saying that defendant had plaintiff's money. He should not be permitted to keep it. The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff. All concur.