THE STATE EX REL. AMERICAN SURETY COMPANY OF NEW YORK v. GEORGE F. HAID ET AL., Judges of St. Louis Court of Appeals.— 30 S. W. (2d) 100.

Division One, July 9, 1930.

*Bryan, Williams & Cave* for relator.

952

*Marion C. Early* and *Ivon Lodge* for respondents.

ELLISON, C.—Certiorari bringing up the record of the St. Louis Court of Appeals in a cause entitled Wellston Trust Co. v. American Surety Co. of New York, the defendant therein being the relator here. The Court of Appeals opinion is reported in 14 S. W. (2d) 23, and reference is made thereto for a fuller statement of the facts. The ultimate question presented is whether the respondent judges contravened the latest controlling decisions of this court in affirming a judgment of the Circuit Court of St. Louis County holding the relator liable on its insurance policy or bond indemnifying the plaintiff Trust Company against loss by robbery.

For a year and a half the Peoples Motorbus Company had been a depositor in the Trust Company, or bank as we shall hereafter call it. During that period the deposits were sometimes made by the Motorbus Company at the banking house of the Trust Company in Wellston, and at other times were received at the office of the Motorbus Company in the same city by the cashier or other employees of the bank sent there for that purpose. The latter practice had obtained for the whole eighteen months aforesaid with the knowledge of all the active executive officers of the bank, but the Motorbus Company was the only customer to whom this service was extended. One day in September, 1926, as the bank cashier and another employee were returning from such a mission they were held up and robbed of about $4500 which had just theretofore been turned over to them by the Motorbus Company. The aforementioned suit followed and the bank had judgment for the whole sum.

The usual course followed by the bank and its customers when money was deposited was that the customer would make out duplicate deposit slips, retaining one and giving one to the bank, or, specifically, to the officer or employee handling the particular transaction. The bank, or such employee, would then enter a credit in the customer's pass book. In the case of the Motorbus Company all this was done, whether the deposit was received at the bus office or at the bank, and the form of pass book and deposit slips employed were such as other customers, generally, had and used. Credit for funds received at the bus office was not entered on the bank ledger until after the money

reached the bank (as was necessarily true, we infer, because the bank ledgers were kept at the bank). But no evidence of the receipt of the money was given to the Motorbus Company other than the entry in its pass book made when the deposit was turned over. The foregoing routine was followed on the day of the robbery in handling the funds involved in this case. The next day the Trust Company entered on its deposit ledger a credit to the account of the Motorbus Company for the amount thereof.

The policy or bond sued on provided:

"The American Surety Company of New York, in consideration of an annual premium agrees to indemnify Wellston Trust Company, hereinafter called the insured, against the direct loss sustained of any money or securities, or both, in which the insured has a pecuniary interest, or held by the insured as bailee, trustee or agent, and whether or not the insured is liable therefor, through robbery, larceny, theft, or holdup by whomsoever committed while such money or securities are in transit within twenty miles of any of the insured's offices and in the custody of any of its employees."

Section 11799, Revised Statutes 1919, defining the powers and purposes of trust companies, contains a proviso added in the reenactment of our banking laws in 1915, Laws 1915, pp. 103, 165, providing that "no trust company shall maintain in this state a branch trust company or receive deposits or pay checks except in its own banking house." A similar provision appears in Section 11737 with respect to banks. The Court of Appeals held these statutes did not relieve the relator or render void or voidable at its instance the transaction whereby the Trust Company received the deposit from the Motorbus Company at the latter's office. The relator contends this ruling contravened certain decisions of this court, which we cite in the succeeding paragraphs, giving also the gist of the holding in each.

Sprague v. Rooney, 104 Mo. 349, 360, 16 S. W. 505, 508, where specific performance of a lease in the form of a contract for the sale of land was denied in view of Section 3816, Revised Statutes 1889 (Sec. 3547, R. S. 1919), forbidding the leasing of land for bawdy house purposes and making such act a misdemeanor.

Cherokee Strip Live Stock Assn. v. Cass L. & C. Co., 138 Mo. 394, 40 S. W. 107, a suit on a note given by the defendant to the plaintiff under a lease which the latter took from an Indian tribe and sublet to the defendant. The lease was held void as against a Federal statute providing: "No . . . lease . . . from any . . . tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution."

First Natl. Bank of Kansas City v. Guardian Trust Co., 187 Mo. 494, 530, 86 S. W. 109, 119, 70 L. R. A. 79. The defendant Trust Company claimed it executed the note in suit only as accommodation

maker or indorser for a third party; and that such act was outside its own charter powers, *ultra vires* and void. It was true that Section 1427, Revised Statutes 1899, defining the powers of trust companies conferred no such authority and was silent on the subject. The opinion says, quoting from another case: "No corporation can bind itself or its stockholders by a contract expressly prohibited by its charter or the general law." But further said, quoting from a Pennsylvania case: "The law never sustains a defense of this nature (*ultra vires*) out of regard for a defendant; it does so only where an imperative rule of public policy requires it." The defendant was held liable.

In Tri-State Amusement Co. v. Forest Park Highlands Amus. Co., 192 Mo. 404, 419, 90 S. W. 1020, 1024, 111 A. S. R. 511, 4 L. R. A. (N. S.) 688, the plaintiff, an unlicensed foreign corporation, sued on a contract to be performed in this State. Section 1024, Revised Statutes 1899, provided that before a foreign corporation "shall be authorized or permitted to transact business in this state" it shall maintain a public office here "where legal service may be obtained upon it," and Section 1025 required it to file with the Secretary of State a copy of its charter, etc. Section 1026 provided a corporation violating the two preceding sections should be subject to a fine of not less than $1,000 and should be denied the right to maintain a suit or action upon any demand in the courts of this State. These three sections are Sections 9790, 9792 and 9793, Revised Statutes 1919. The opinion held the first two sections mentioned struck at the validity of business transacted or contracts entered into before compliance therewith, and that such contracts would be invalid even in the absence of the third section imposing a penalty and forbidding the prosecution of suits in court. Another similar case cited is Parke, Davis & Co. v. Mullett, 245 Mo. 168, 173, 149 S. W. 461, 462-3.

In National Bank of Commerce v. Francis, 296 Mo. 169, 196, 246 S. W. 326, 333, certiorari denied 261 U. S. 618, 67 L. Ed. 829, 43 Sup. Ct. Rep. 362, the plaintiff bank sued to recover money it had expended in purchasing certain non-negotiable notes payable only out of a designated collateral trust fund, on the theory that it had no charter authority to deal in that kind of paper. This court said, quoting from an earlier case: "The defense of *ultra vires* is not admissible where the contract has been fully executed on one side, unless it is a contract expressly prohibited by law;" and ruled against the bank for that and other reasons.

State ex rel. Conn. Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S. W. 87, a certiorari proceeding quashing the opinion of the Springfield Court of Appeals as reported in 215 Mo. App. 386, 257 S. W. 178. These cases deal with the Motor Vehicle Act, Laws 1921 (1st Ex. Sess.) pp. 76, 90. Section 18 (c) thereof provides, substantially, that "it shall be unlawful for any person to buy or sell" any motor vehicle without an assignment of the certificate of ownership as in the act specified,

and that every such sale "shall be fraudulent and void." The Supreme Court opinion held a sale made in violation of the statute was void and passed no title, the ruling being based by analogy on the conclusions reached in cases dealing with other statutes, particularly those concerning foreign corporations, heretofore mentioned.

Bassen v. Monckton, 308 Mo. 641, 647, 274 S. W. 404, 406; State ex rel. Nolen v. Nelson, 310 Mo. 526, 539, 275 S. W. 927, 930; Kusnetsky v. Security Ins. Co., 313 Mo. 143, 155, 281 S. W. 47, 50. All three of these cases are directed at Sections 13276 and 13279, Revised Statutes 1919, which provide: "It shall be unlawful for any person to engage in or transact any business in this state under a fictitious name without first registering same with the secretary of state . . . ;" and make a violation of the law a misdemeanor. The court said these statutes neither expressly nor by implication render void a contract entered into by a party under a fictitious name, but merely require registration thereof and impose a penalty for failure to do so. It was further held that when one party under an unregistered fictitious name deals with another, if the latter knows with whom he is dealing and no fraud results he will be estopped to complain. Many decisions are reviewed and the fact is pointed out that in practically all of them the particular transaction attacked was itself *malum in se*. The cases concerning foreign corporations are distinguished on the ground that such artificial, legal entities are not protected by Section 4, Article II, of our Constitution and could be excluded from the State altogether, whereas individual persons have certain inalienable natural rights.

State ex rel. Barrett v. First Natl. Bank, 297 Mo. 397, 414, 249 S. W. 619, 624, 30 A. L. R. 918, aff. 263 U. S. 640, 68 L. Ed. 486, 44 Sup. Ct. Rep. 213, an original quo warranto proceeding instituted by the Attorney-General. The case holds a national bank cannot engage in branch banking in this State, in view of the express provisions of Section 11737, Revised Statutes 1919, the counterpart of Section 11799 applying to trust companies.

Moorshead v. United Rys. Co., 203 Mo. 121, 165, 96 S. W. 261, 271. The plaintiff sued for personal injuries resulting from the violent starting of a street car on which she was riding as a passenger. The defendant disclaimed liability on the ground that the car was being operated by the St. Louis Transit Company to which all its property had been leased, such leasing being authorized by Section 1187, Revised Statutes 1899 (Sec. 10122, R. S. 1919). The plaintiff replied that it would be against public policy to permit a carrier to lease its property and thereby escape liability for torts thereafter committed in the operation of the road. This court said: "The very highest evidence of the public policy of any State is its statutory law;" and held that since the statute permitted leasing and did not provide for

the retention of operating liabilities against the lessor, the plaintiff could not recover.

Harrington's Admr. v. Crawford, 136 Mo. 467, 38 S. W. 80, holds a bond indemnifying an officer against loss for omitting to execute final process is against public policy and no recovery can be had thereon.

Blair v. Perpetual Ins. Co., 10 Mo. 559, 565, 47 Am. Dec. 129, is the last case cited. We shall discuss it later in the opinion.

I. We are not at liberty to inquire into the correctness of the Court of Appeals' construction of Section 11799, Revised Statutes 1919—holding the statute did not render void the act of the Wellston Trust Company in receiving the deposit of the People's Motorbus Company at the latter's office. Our sole province is to ascertain whether the opinion conflicts with previous controlling decisions of this court. [State ex rel. Tummons v. Cox, 313 Mo. 672. 677, 282 S. W. 694.] The relator does not contend the precise question has ever been passed on here. The only Supreme Court case cited, or ever decided so far as we are advised, bearing on that part of the statute is State ex rel. Barrett v. First Natl. Bank, supra, 297 Mo. 397, 249 S. W. 619, 30 A. L. R. 918, which holds that under the companion Section 11737, national banks have no authority to maintain branch banks in this State—a very different thing. But the relator contends the opinion contravenes general principles announced in other cases and apposite rulings based on similar facts.

We do not think so. Without going over again the cases cited by the relator—for we have reviewed them too fully already—it is sufficient to say they prescribe no formula which made it incumbent on the respondent judges to rule the cause otherwise than as they did. It may be granted, and is true, that when a contract or particular transaction of a corporation (or individual person, for that matter) is "expressly prohibited by law," it is void. [National Bank of Commerce v. Francis, supra, 296 Mo. 1. c. 196, 246 S. W. 1. c. 333.] It may be further granted that some statutes should be construed as rendering void and illegal any and every specific and particular act done in the line of a course of business banned thereby—and this even though the statute contains no express declaration to that effect; so, also, sometimes, when the statute imposes no penalty for a violation thereof. The case of Tri-State Amusement Co. v. Forest Park Highlands Amus. Co., supra, 192 Mo. 404, 90 S. W. 1020, 111 A. S. R. 511, 4 L. R. A. (N. S.) 688, is stressed by the relator on this point.

But it is not true that a statutory prohibition against a specified course of business conduct always is tantamount to a denunciation as void of each and every individual corporate act at variance therewith. No better illustration of that fact can be found than in Section 7,

Article XII, of the Constitution of Missouri which provides "no corporation shall engage in business other than that expressly authorized in its charter . . . nor shall it hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business." It has long been the settled doctrine in this State that even this provision of our fundamental law does not, at the instance of a private suitor, nullify the particular transactions of a corporation in carrying on business or holding real estate in violation of the section after they have been fully executed, or executed by the other party. [Schlitz Brewing Co. v. Mo. Poultry & Game Co., 287 Mo. 400, 408, 229 S. W. 813, 815; Farmers' & Traders' Bank v. Harrison, 321 Mo. 815, 12 S. W. (2d) 755, 758; Title Guaranty Trust Co. v. Sessinghaus, 325 Mo. 420, 28 S. W. (2d) 1001.]

Neither can the decisions just cited and others of like tenor be distinguished on the ground that the constitutional provision is *general,* whereas Section 11799 *specifically* mentions and forbids the reception of deposits by a trust company except at its own banking house. For the provision in the Constitution with reference to holding real estate is specific, and as is said in the Schlitz Brewing case, quoting from a Texas decision, "in many cases (and these in our opinion the most authoritative) when the statute has a specific but at the same time an implied application, the doctrine of estoppel against the beneficiary of an executed contract is not changed." In other words, though the legislation be explicit in its reference to things forbidden yet if on a construction of the law as a whole no fair implication arises that acts done in violation thereof shall be void— or, to put it another way, if the implications from other parts of the statute equalize or overcome whatever inferences might otherwise be drawn that any individual act of the class proscribed shall be void— then such particular acts will not be held void, as against a party who has performed his side of the transaction.

One of the authorities cited and quoted from in the Schlitz Brewing case, supra, and the Texas case referred to therein, is National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188, where a national bank made a loan on real estate security in violation of a Federal statute which by admittedly clear implication forbid transactions of that identical sort. It was held the loan was not void. The court said, quoting from an earlier decision of the U. S. Supreme Court: "The statute must be examined as a whole, to find out whether or not the makers meant that a contract in contravention of it was to be void, so as not to be enforced in a court of justice."

Examination will show that the decisions of this court usually have been influenced by certain extraneous considerations, such as the underlying purpose and spirit of the statutes involved as gathered from the whole text and the attendant facts; and by the nature of the classes of acts forbidden—whether *malum in se* or in some way detri-

mental to the public welfare. Thus in Kusnetsky v. Security Ins. Co., supra, 313 Mo. l. c. 155, 281 S. W. l. c. 50, it is pointed out that in a number of cases the statutes were aimed at gambling contracts, the keeping of a bawdy house, dealing with the public enemy, labor on Sunday, leasing of ·Indian lands, and the like; that one of the purposes of the Motor Vehicle Act reviewed in State ex rel. Conn. Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S. W. 87, was to prevent thefts.

And as regards unlicensed foreign corporations it is said in the Tri-State Amusement case the object of the law is to place them on an equality with domestic corporations and to make them accessible to suit in this State so our citizens may enforce their rights without going to a foreign jurisdiction. In commenting on the statutes forbidding the transaction of business under a fictitious name the court has said the law did not nullify specific and particular transactions, though violative of the act, if they were intrinsically innocent and free from fraud, because the right to traffic and engage in business is an inherent, natural right belonging to individual persons and the statutes would be unconstitutional if they attempted to forbid it.

So in Hunter v. Garanflo, 246 Mo. 131, 151 S. W. 741, a case not cited by the relator, it was held the act of a corporation in pledging its property to secure a note given for the purchase of its own capital stock was *ultra vires* and void, because it amounted to a reduction of the capital assets in violation of Section 10159, Revised Statutes 1919, and the Constitution, the purpose and spirit of these being to preserve the corporate capital intact for the benefit of creditors and stockholders.

Without continuing this abstract discussion further our conclusion is that the mere presence in the statute, Section 11799, Revised Statutes 1919, of the proviso forbidding a trust company from maintaining a branch trust office and from receiving deposits except at its own banking house, did not of itself render void the particular transaction complained of in this case by reason of any general or fixed principle of statutory construction announced by the controlling decisions of this court; that many things beside the mere letter of a statute may enter into its construction, these varying with the particular legislation considered, and that no decision cited by the relator can be said to be based on facts so similar to those presented by this record as to make the respondents' opinion conflict therewith.

II. The relator stresses also the case of Moorshead v. United Rys. Co., supra, 203 Mo. l. c. 165, 96 S. W. l. c. 271, where it is said: "The very highest evidence of the public policy of any state is its statutory law." Relator's argument from this decision seems to be that whenever a statute is violated public policy is violated, and that the opinion of the St. Louis Court of Appeals ought to be quashed because it failed to hold the act of the Wellston Trust

Company in receiving the particular deposit involved here was void as against public policy. But we shall not go into that question. What the public policy of the State is with reference to acts covered by the statute, must be determined from a construction of the statute (In re Rahn, 316 Mo. 492, 499, 291 S. W. 120, 122, 51 A. L. R. 877, 883); and that we have already held, was a question the St. Louis Court of Appeals was free to determine.

III. The relator particularly urges that the opinion of the Court of Appeals conflicts with Blair v. Perpetual Ins. Co., 10 Mo. 559, 47 Am. Dec. 129, where, it is insisted, the facts were closely parallel to those found here. In that case an insurance company sued a personal signer on the surety bond of one of its agents who had defaulted. The defense was that the insurance company had conducted a banking business in violation of its charter and an express statute, and that the agent was assigned to that service. This court sustained the defense on the ground that the insurance company had no authority to engage in banking and the undertaking of the surety was to be strictly construed.

We do not consider the case in point for two reasons. In the first place the contract involved here is an insurance policy, not the mere obligation of a personal surety, and was to be construed most strongly against the insurer. [Fidelity & Deposit Co. v. Gill & Sons (Mo. Div. 2), 270 S. W. 700, 705.] In the second place the policy insured the Wellston Trust Company "against the direct loss . . . of any money . . . in which the Insured has a pecuniary interest, or held by the Insured as collateral, or as bailee, trustee or agent, and whether or not the Insured is liable therefor . . . through robbery, . . . theft or hold-up . . . while the Property is in transit within twenty miles of any of the Insured's offices covered hereunder . . ." In view of these provisions no argument is needed to demonstrate the Court of Appeals was not bound to regard the Perpetual Insurance case as controlling authority, especially when it is remembered the respondents ruled (as we have said they were free to do) that the reception of the deposit by the Trust Company was binding as between it and the Motorbus Company.

IV. Finally the relator asserts the Court of Appeals opinion should be quashed because it singled out a particular part of the policy and based its ruling thereon, ignoring other pertinent provisions to the contrary and thereby violating the rule that contracts should be construed in their entirety, as declared in Enright v. Schaden (Mo. en Banc), 242 S. W. 89, 92, and many other cases. This assignment, as we see it, in effect simply asks us to construe the whole contract independently and to declare the

Court of Appeals erred in its construction—for it is not contended this court has ever passed on a similar policy. This we cannot do in a certiorari proceeding.

Writ quashed. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.