BANK OF CONCEPTION, RESPONDENT, v. AMERICAN BONDING COMPANY, APPELLANT.—89 S. W. (2d) 554.

Kansas City Court of Appeals. December 2, 1935.

*Livengood & Weightman* for respondent.

*Ernst & Williams, Wright & Ford, R. Shedrick Meek* and *T. F. Griffith* for appellant.

REYNOLDS, C.—This is a suit by the plaintiff, the respondent herein, against the defendant on a policy of insurance against loss by robbery issued by the defendant to the plaintiff for loss in the sum of $1,387.10 with interest at six per cent from November 9, 1934, and for penalties for vexatious refusal to pay and attorney's fees. The cause arose in the Circuit Court of Nodaway County, the petition therein being filed by plaintiff in said court on December 12, 1934.

The plaintiff is a banking corporation engaged in the business of banking at Clyde, Missouri; the defendant is an insurance company engaged in the business of insuring banks and other institutions against burglary, robbery, and other losses; and both are lawfully authorized to do and transact business in Missouri.

In April, 1934, the defendant issued to the plaintiff its policy of insurance by which it, under paragraph II, section (i), condition R of the provisions thereof, insured plaintiff in a sum not exceeding $3000 against loss by robbery for the period of one year from the date of issuance of said policy; and, by agreement of plaintiff and defendant, the provisions of an endorsement made thereon or a rider

thereto attached were made a part of said policy, which said provisions are as follows:

"It is hereby agreed that the Company's liability for loss of money as insured under Paragraph II of the Policy of which this endorsement forms a part is limited to fifteen per centum (15%) of the amount of insurance applicable under said Paragraph II as specified in Section (i) of Condition R of said Policy, if loss thereof is occasioned by Robbery as defined in the Policy, when such Money is located within the Assured's premises but not within a vault, safe, chest or similar receptacle locked by time lock at the beginning of such robbery, provided that the foregoing limitation shall not apply to such a loss;

"(a) occurred at any time when at least two employees or guards equipped with loaded firearms are stationed at each unlocked entrance door to the premises;

"(b) of Money unexpectedly received if placed within a safe, chest or vault locked by combination lock not later than fifteen minutes subsequent to the receipt thereof and which Money at the first opportunity shall be placed under the protection of a time lock or protected as required by Subdivision (a) of this endorsement.

"Said policy shall be subject to all its agreements, terms, conditions and limitations except as herein especially modified."

Neither of the exceptions stated are involved in the case at bar. In the policy, robbery is defined as follows: " 'Robbery' as used in this policy, shall mean a felonious or forcible taking of property (a) by violence inflicted upon the person(s) having care or custody of, or rightful access to, the property; or (b) by putting such person(s) in fear of violence; or (c) by an overt felonious act committed in the presence of such person(s) and of which such person(s) were actually cognizant, provided that such act is not committed by an officer or employee of the assured."

On the morning of November 9, 1934, while said policy was in full force and effect, certain persons entered the bank building and by robbery took from plaintiff bank therein the sum of $1387.10 in money belonging to it.

The bank building is a small, one-story building with the main entrance to the northeast. At the rear of the building is another door which opens into another room in the northwest corner of the bank. The banking business is conducted in the front two-thirds of the building; and in the southwest corner thereof is the vault containing the safe from which the money was taken. Two robbers forcibly entered the bank building at about 4 A. M. of the date in question. They forced open the front door of the bank, or unlocked it, and concealed themselves in the small room in the northwest part of the building. A third robber remained outside

and kept watch over persons on the streets about the bank building and for the approach of the cashier to open and enter the building. The evidence shows that this third robber spent his time from 4 A. M. until just prior to the robbery in driving around the streets in his automobile and, as soon as the cashier, Miss Wirth, appeared and entered the bank, parked his car behind hers and went across to the front of the bank building where he accosted two citizens of Clyde, Joseph R. Stucker and Ed Lynch, and, at the point of a loaded revolver, forced them to enter the bank building with him. The two robbers who had entered the front door of the bank building about 4 A. M. and concealed themselves in the small room to the northeast, remained in hiding; and, about 7 A. M., one J. J. Enis, who did notarial work for the bank and used the back room in the bank a part of the time as an insurance agent and who testified that he was paid by the bank to do its driving, entered the outside door leading into the small room. He was immediately grabbed by the two robbers and forced to lie down on the floor on his face, after which he was securely tied and bound. The robbers cut holes in a window shade covering the glass in the door leading into the main part of the bank building and watched until the cashier, Miss Wirth, arrived about nine o'clock. She entered the front door and immediately went about the task of getting ready for the day's business. The evidence clearly shows that the time lock on the safe was set to open at 9 A. M. Miss Wirth opened the door; and, before she had time to take out the cash, the robbers rushed in upon her and, at the point of loaded revolvers and with great force and violence and threats, took out of the safe $1387.10. The robber who had remained on the outside as a guard, just prior to the time that the money was taken out of the safe by the other robbers in the presence of Miss Wirth, brought in Lynch and Stucker and locked them, together with Miss Wirth, in the vault; and the three robbers then escaped with their loot. Mr. Enis extricated himself from the ropes with which he was bound and freed the other captives from the vault. The bank officials immediately notified the peace officers and the Missouri Bankers Association at Sedalia, but the robbers had made good their escape. The bank officials also notified the insurance company at once of the robbery and the loss; and the evidence tends to show that the plaintiff did all that was required of it to do according to the terms of the policy in order to be entitled to make claim for its loss.

The petition alleges the execution and the delivery of the policy of insurance sued upon to the plaintiff by the defendant in consideration of the payment of premiums therefor. It alleges the terms and the conditions thereof and alleges that, under the provisions of paragraph II as specified in section (i) of condition R of said policy, the

58

defendant insured the plaintiff against loss of money or securities belonging to it to the amount of $3000, from burglary or robbery committed upon the premises owned and occupied by plaintiff, in carrying on its business as a bank, upon the conditions in said policy set out, including the conditions endorsed in the endorsements thereon or riders thereto attached and by agreement made a part of said policy. It sufficiently alleges a loss of certain money belonging to plaintiff and being its property in the sum of $1387.10, by robbery on or about November 9, 1934, while the same was locked in a safe in said premises under a time lock, and at a time when said policy was in full force and effect. It further alleges the full compliance by plaintiff with all of the terms, conditions, and requirements of said policy upon its part and alleges that, immediately upon said loss by said robbery, it made to the defendant proof of said loss and gave notice to all peace officers and others as required by said policy. It prays judgment against the defendant for the sum of $1387.10, the amount of the loss incurred, with interest at six per cent from said date. It may be said that the petition in all respects sufficiently states a cause of action under the policy against defendant for the loss sustained.

The answer denies each and every allegation of plaintiff's petition other than those expressly admitted. It specifically sets up the written endorsement thereon or rider agreement attached thereto and made a part of said policy as a complete defense to plaintiff's recovery upon its claim for the full amount of its loss and alleges that it was liable to plaintiff under said endorsement or rider and the policy of which it was a part for only fifteen per cent of the amount of the insurance specified in paragraph II, section (i), condition R of the policy or for the sum of $450 only; and, by other allegations, it sets up that the loss complained of was not occasioned by robbery as defined in said policy, while said property was located within the assured's premises within a vault, safe, chest, or similar receptacle locked by a time lock at the beginning of such robbery. It further specifically alleges that the time lock on plaintiff's safe was not locked, wound, or set at the beginning of the robbery as alleged in the petition but that said safe door was open at the beginning of the robbery. It further alleges that the money charged to have been taken was not under a time lock at the beginning of said robbery as in said policy of insurance and endorsement thereto attached it was provided it should be kept; that there were not at least two employees or guards equipped with loaded firearms at each unlocked entrance door leading to the premises at the beginning of said robbery, as in said policy and endorsement was required; and that, by reason thereof, defendant was liable, under the provisions of said policy and under the endorsement or rider attached and referred to, for only

fifteen per cent of the total loss or for $450. By its answer it admitted such liability and tendered such sum of $450 to plaintiff and offered to pay and did pay the same into court and offered that plaintiff might have judgment in said sum.

At the close of the plaintiff's case, the defendant requested a peremptory instruction in the nature of a demurrer which was by the court overruled. Such request was again made at the close of the whole case and was again by the court overruled.

Upon the trial, the policy of insurance, with all endorsements made thereon and riders attached thereto and made a part of said policy by agreement, was introduced in evidence. Evidence was also introduced tending to support the allegations of the petition with respect to the robbery alleged and the loss sustained by plaintiff by reason thereof and all other allegations, sufficient to entitle plaintiff to a submission of its case. The cause was submitted to the jury upon the evidence adduced by plaintiff and a verdict was rendered in favor of plaintiff for the sum of $1387.10 to bear interest from November 9, 1934, the date of the robbery. Judgment thereon being rendered, the defendant, after unsuccessful motions for a new trial and in arrest of judgment, prosecutes this appeal.

## OPINION.

Upon this appeal, the defendant assigns error upon the action of the trial court in the refusal of its requested instruction in the nature of a demurrer at the close of plaintiff's case and again at the close of the whole case and in the giving of instructions A, C, and E as asked by plaintiff and in the refusal of instructions Nos. 5 and 8 requested by the defendant. It also assigns error on the part of the trial court in overruling its motion for a new trial and also in overruling its motion in arrest of judgment.

1. The first point made by defendant is that the court erred in the refusal of its requested instruction in the nature of a demurrer to the evidence at the close of plaintiff's case and also erred in the refusal of its peremptory instruction requested at the close of all of the evidence. The point is based upon the contention that the evidence discloses that the robbery was committed while both the safe and the vault were unlocked and standing open; that Miss Anna Wirth, cashier of the bank, was the only person present in the bank prior to and during the robbery who had the care and custody of the money in the bank; that the money taken was not taken from the person of Miss Wirth against her will by violence, force, or intimidation offered to her person; that Miss Wirth was not molested in any way nor made aware of the presence of the robbers until both the safe and the vault were unlocked and were standing open; and that the robbery was not begun until the vault and the safe were unlocked.

The defendant admits that, under the evidence, a robbery was committed and that the plaintiff thereby lost the sum of $1387.10 in money belonging to it while the same was in the safe in the vault in the bank premises. It contends that the issue is not whether a robbery was committed, but is whether or not the robbery which occurred had its beginning prior or subsequent to the time that the time lock on the safe in the bank vault was due to and did release the bolts of the safe door so that the money therein became accessible. It admits that, if the robbery began at a time when the safe containing the money was under time lock, the defendant is liable under the terms of the policy for the full amount of the loss, within the amount of the insurance provided; but it contends that, if the money in the safe was not under time lock at the time that the robbery began as defined in the policy, then the defendant is liable for fifteen per cent of the amount of the insurance only or, in this case, for $450, unless at the time of such robbery at least two guards were on duty at each entrance door of the bank equipped with loaded firearms.

2. In its contention that the robbery was not begun until after the time lock was off and the safe was open, defendant gives no effect to the evidence of other facts and circumstances in the record immediately surrounding, contemporaneous with, done in furtherance of—and all forming a series contributing to, leading up to, and culminating in—the complete crime of the robbery in the presence of Miss Wirth or of other facts and circumstances in the record tending to show that the robbery was in fact begun before the time lock on the safe was off and the safe open. The evidence in the record tends to show that three persons, whose names and persons were unknown to Miss Wirth, the cashier of the plaintiff bank, and to other employees and officers thereof, at the time the money in question was taken from the safe and the time of the final consummation of the robbery by the forcible taking of such money from the safe in the presence of Miss Wirth, the cashier of the bank and the custodian of said money, had unlawfully effected an entrance into the premises and into the bank building of the plaintiff, in which the money and the safe in which it was kept were situated, at about four o'clock in the morning of the robbery which occurred at or immediately around nine o'clock that morning; that two of them remained in said bank building and concealed themselves therein until the arrival of the cashier at nine o'clock, when she immediately unlocked the combination lock on the vault in which the safe was locked and unlocked the key lock on the safe in which the money was, just as the time lock (which had been set to unlock at nine o'clock) automatically unlocked; and that, just as she was preparing to remove the money from the safe and again to set the time lock thereon, one of said robbers, without previous notice to her, appeared and by

force and violence offered to her person and by threats of bodily harm made in her presence put her in fear and by force and violence proceeded in her presence to take and carry away the money from the safe in which it was being kept. Not only did two of the said robbers enter the bank building and conceal themselves therein for about five hours for the purpose of accomplishing the ultimate act of the robbery of the bank when the safe should be unlocked; but the third of such robbers, acting with them and having the same purpose in view, appears to have remained on guard on the outside of the building during all of that time and to have kept watch for Miss Wirth, the cashier, to approach and open and enter the bank and to have kept watch upon other persons on and about the streets in front of said bank and, upon the appearance of Miss Wirth and her entry into the bank building, to have covered with his revolver two citizens of the town, Lynch and Stucker, found on the streets in front of the bank building at the time, and forced them to enter the bank building with him shortly after Miss Wirth had entered therein, where they were bound by him and the robbers in the building and were thrown on the floor and ultimately into the vault containing the safe and were locked therein along with the cashier, after the money had been taken. Not only so; but one Enis, who did notarial work for the bank and kept an office in the banking rooms of said bank, upon entering the building at about seven o'clock that morning by a rear door, was immediately set upon by the robbers who were concealed in the building and was bound by them and thrown on the floor and kept there until after nine o'clock and until after the robbery had been consummated. All of these facts and circumstances are to be regarded with the consummated act of robbery as constituting one transaction. They were acts done in furtherance of the accomplishment of the robbery and in the ultimate perpetration of such robbery; and all of such prior acts were part of the *res gestae* attendant upon the main act. [State v. Kennedy, 154 Mo. 268, 55 S. W. 293; State v. Williams (Mo.), 183 S. W. 308.]

3. Defendant contends that, under the definition of the term "robbery" as set out in the policy, all of such acts are to be excluded from consideration in determining the time at which the robbery began; that the time at which the robbery began can be only when violence was first inflicted by the robbers on Miss Wirth, the cashier, or when she was put in fear of such violence by threats or other means or when some overt felonious act was committed by the robbers in her presence of which she was cognizant; and that all of such happened after the safe was unlocked and therefore at a time when such money was not in a safe under time lock and was not covered by the provisions in paragraph II, as specified in section (i), condition R or other paragraphs in the body of the original policy sued upon

but, if such money was covered at all, it was covered by the provisions of the endorsement made upon such policy or of the rider attached thereto set up in the answer and by the provisions of the original body of the policy as modified thereby.

We cannot agree to such contention. It is true that, before any obligation could rise upon defendant's part to pay plaintiff for the loss of the money taken, the money must have been taken under the circumstances required in such definition; that is by violence offered to the person having the care and the custody or the right of access to the money or by putting such person in fear of violence or by the commission of some overt felonious act by the robbers in the presence of such person of which such person was cognizant. All of such requirements are fully satisfied by the facts shown in the record; but that such is true does not preclude the consideration of other acts by the persons perpetrating the robbery shown. That other acts and means were employed leading up to and in furtherance of such final act than those required by the definition of robbery in the policy is immaterial; the required elements were present. Such other acts were merely aids to the final employment of such elements of violence in the accomplishment of the robbery attendant thereon and a part of the *res gestae* of the completed act of robbery. Such other acts, although not necessary in addition to the final acts employed in the consummation of the robbery, nevertheless, in fact contributed to the completed robbery in opening the way for its perpetration and in making an opportunity therefor. It is therefore competent to consider such other or prior acts along with the completed act of robbery, into which they were merged, for the purpose of determining the time and the place, when and where, the consummated robbery began.

In the cases of both State v. Kennedy, supra, and State v. Williams, supra, referred to, a series of acts done by the robbers both in and out of the immediate presence of the persons robbed, leading up to and culminating in the final act of robbery as defined by statute, was held a proper matter of evidence for consideration as a part of such robbery in establishing the robbery charged within the meaning of the statute. The felonious and forcible taking of property by violence inflicted on persons having the care or the custody of or the rightful access to such property or by putting such persons in fear of violence or by an overt felonious act committed in the presence of such persons of which such persons were actually cognizant is in no way essentially different from the requirements of such a felonious and forcible taking of property under the statute. [Section 4058, Revised Statutes 1929.] Robbery as defined by section 4058, Revised Statutes of 1929, is essentially the same as that defined by the policy. Robbery as defined by such statute is the felonious taking of the property of another from his person or in his presence against his will by violence

or by putting him in fear. What was ruled and held by the court in those cases controls this situation. Under the facts and the circumstances above set out (referred to in the record in this case), the beginning of the robbery is not to be limited to the taking place of the final act of the felonious and forcible taking of the money from the safe at the time it was taken or immediately thereafter by violence to the person of Miss Wirth, the custodian in charge thereof, or to the putting of her in fear or to any overt felonious act committed in her presence; but the beginning of the robbery was with the first act performed by the robbers in pursuance of their plan to effect the robbery and in furtherance of the accomplishment of the robbery—that is, with their act in making an unlawful entry into the bank building—and such robbery continued through the series of acts by them which followed, culminating in the completed robbery. At the time that the robbers entered the building, which is to be taken as the beginning of the robbery as above stated, the safe containing the money was under time lock in the vault; and the vault was locked, as were also the doors and the entrances to the building. Not only so, but such money was under time lock in the same at the time that the other acts following the first mentioned, prior to the final consummation shown of the robbery, were done by the robbers. Each of said acts was, as we have seen, a part of the one transaction of robbery and was done in furtherance thereof. The robbery must therefore, upon the facts in the record, be held to have had its beginning prior to the unlocking of the safe and the release of the time lock thereon and prior to the time that the robbers came upon the cashier when the safe was unlocked and the money in the safe was taken therefrom; and the full loss suffered by the plaintiff, in the sum of $1387.10, was covered under paragraph II of the provisions of the policy sued upon as specified in section (i) of condition R of said policy.

4. Moreover, if the policy sued upon as to its contractual provisions is susceptible of two constructions, that construction most favorable to the insured will be given. A provision reasonably susceptible of two meetings, one broader in scope than the other, will be interpreted most favorably to the insured. If whether the policy by its provisions was intended to cover robbery as ordinarily understood and as defined by the statute as the forcible taking of one's property from one's person or one's presence against one's will or as something less than that be a debatable question under the terms of the policy, that construction should be given which is most favorable to the insured. [Renshaw v. Missouri State Mut. Fire & Marine Ins. Co., 103 Mo. 595, 15 S. W. 945; State ex rel. American Surety Co. of N. Y. v. Haid, 325 Mo. 949, 30 S. W. (2d) 100; Walker to Use of Foristel v. American Automobile Ins. Co. (Mo. App.), 70 S. W. (2d) 82.] That it is a debatable question is clear.

It follows from what has been said that there is no error on the part of the trial court in the refusal of the instructions in the nature of demurrers requested by the defendant at the close of plaintiff's case and again at the close of the whole case. [State v. Kennedy, supra; State v. Williams, supra.] That there was no error on the part of the trial court in granting instructions A, C, and E asked by plaintiff and in refusing instructions 5 and 8 requested by the defendant and that there was no error in the action of the court in overruling defendant's motions for new trial and in arrest of judgment are also clear.

We have disposed of all of the assignments of error made by the defendant. We find no prejudicial error upon the trial. The cause was fairly tried, and the judgment is for the right party. The judgment of the trial court should be and is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.