The ST. LOUIS TEACHERS ASSOCIATION, a corporation, Respondent,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS, a Body Corporate, Appellant.

No. 59574.

Supreme Court of Missouri, En Banc.

Dec. 30, 1976.

Kenneth C. Brostron, St. Louis, for appellant.

Charles A. Werner, St. Louis, for respondent.

George E. Kapke, Independence, amicus curiae.

HENLEY, Judge.

This is an action by the St. Louis Teachers Association (the Association) against the Board of Education of the City of St. Louis (the Board) seeking a judgment (1) declaring that a writing entitled "Recapitulation of Understandings" (the Agreement)[1] is a valid agreement binding upon these parties, and (2) for specific performance by the Board of obligations alleged to have been made therein. Judgment was for the plaintiff on both counts and defendant appealed to the Court of Appeals, St. Louis District.

That court reversed the judgment and remanded the case with directions to enter judgment for defendant. We ordered the case transferred to this court on application of the Association.

The crucial question, the answer to which is decisive of this case, is whether, as the Board contends, the Agreement is void ab initio because procured by and produced as a result of a strike and other illegal acts of school teachers, members of the Association and the Union.

The Association is an organization of state certified teachers employed by the Board. The St. Louis Teachers Union, Local 420 (the Union) is also an organization of state certified teachers employed by the Board.

On January 21, 1973, after repeated unsuccessful attempts to meet with the Board and its budget committee, the leadership of the Association urged the teachers to go on strike and, upon a vote being taken, they did strike, thereby closing the St. Louis schools. The strike continued until February 18, 1973. The purpose of the strike was to secure an agreement with the Board providing for higher salaries, fringe benefits, and a grievance procedure for the teachers.

During the period between January 21, and February 19, 1973, representatives of the Board, the Association and the Union met to discuss and attempt to settle the differences between their respective principals.

On January 31, 1973, the Board sought and obtained from the Circuit Court of the City of St. Louis a decree enjoining the Association and the Union from continuation of the strike. On the same day, a representative of the Association stated publicly that its members would "defy this injunction and continue the strike," and the teachers did thereafter refuse to obey the injunction and continued to keep the schools

---

1. The St. Louis Teachers Union, Local 420, not a party to this action, joined in the execution of the Agreement. The Agreement (omitting the signatures of attorneys representing the Board, the Association and the Union) and the understandings referred to in paragraph 9 thereof are set out in full in the appendix hereto.

closed. Thereafter, contempt proceedings were filed against the Association, its president, and the Union and its president. On February 6, 1973, the trial court found the Association and its president guilty of criminal and civil contempt. The Association was fined $515,000; its president was fined $5,800 and sentenced to jail for 60 days.

The injunction decree and the judgments of contempt notwithstanding, the teachers refused to return to their classrooms until their demands were met with an agreement in writing. On Sunday, February 18, 1973, the Board and the Association, through their attorneys, reached a settlement of their differences. The settlement was reduced to writing as the "Recapitulation of Understandings," referred to above, and was executed the next day by these attorneys.

■ The public policy of this state, declared by § 105.530, RSMo 1969,[2] is that public employees do not have the right to strike against their governmental employer. City of *Grandview v. Moore*, 481 S.W.2d 555, 558[3], (Mo.App.1972) and cases there cited; *City of Webster Groves v. Institutional and Public Employees Union*, 524 S.W.2d 162, 165[5] (Mo.App.1975). See also: 51A C.J.S. Labor Relations § 306, pp. 104–6.

The court said in *McDearmott v. Sedgwick*, 140 Mo. 172, 39 S.W. 776, 778[2] (1897): "The principle is well settled that 'no court will lend its aid to a man who founds his cause of action upon an * * * illegal act.' This is a principle founded upon public policy, 'not for the sake of the defendant, but for the law's sake, and that only.'" *Schoene v. Hickam*, 397 S.W.2d 596, 602[11] (Mo.1966); *Greer v. Zurich Insurance Co.*, 441 S.W.2d 15, 26[8] (Mo.1969).

■ There can be no doubt that the Agreement upon which the Association bases its suit was produced by an illegal strike by the public school teachers. The evidence is overwhelming that the strike would continue and the schools would remain closed until an agreement satisfactory to the Association could be reached; that no authority would be permitted to stop the strike, the public welfare notwithstanding. Not only did the strike contravene the declared public policy of the state, but its continuance after negotiations between the parties had begun, and its continuance in defiance of the injunction and judgments of contempt demonstrated an utter disregard and disrespect for the processes of the law the Association now seeks to invoke to enforce its Agreement. For the reasons stated, the Agreement was void (not merely voidable) and the trial court erred in entering judgment for the Association.

The judgment is reversed and the cause is remanded with directions that the trial court enter judgment consistent with this opinion.

MORGAN, HOLMAN, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

### APPENDIX

### RECAPITULATION OF UNDERSTANDINGS

1.) Effective upon resumption of teaching and for the remainder of the 1972–73 school year, teachers' salaries will be increased on an annual basis of $400.00 across-the-board ($200.00 for the second semester of the current year.) Regular substitutes will receive a $2.00 per day increase.

2.) Effective for the 1973–74 school year, an additional $400.00 across-the-board salary increase will be instituted. Regular substitutes will continue to be paid on the basis of $28.00 per day.

3.) The Index Ratio of teacher salaries will be the subject of further discussions in any consideration of teachers' salaries after the 1973–74 school year.

2. Section 105.530 is as follows: "Nothing contained in sections 105.500 to 105.530 shall be construed as granting a right to employees covered in sections 105.500 to 105.530 to strike."

4.) Commencing August 29, 1973, the Board of Education, at its expense, will provide teachers hospitalization insurance containing the features covered in a report of the Joint Committee on Insurance.

5.) There will be no strike, work stoppage or interference with normal teaching duties, and in the event that such shall occur, it is agreed that the same will constitute irreparable injury to the Board of Education and shall be grounds for injunctive relief. It is agreed that service of process in any proceeding to enforce the foregoing no-strike provision shall be effective by the Board of Education's mailing of notice of any such action by certified mail to the respective offices of the St. Louis Teachers Association, or its successor, and the St. Louis Teachers Union, Local 420, and this shall also constitute effective personal service upon the then officers of those two organizations.

6.) Teachers who are eligible for a Spring vacation during the 1972–73 school year will be paid therefor at the close of the 1972–73 school year.

7.) No disciplinary action or penalty will be invoked by the Board or its agents against any teacher in connection with his employment and no reprisals of any kind will be visited by any teacher or representative of said Union or Association, or its successor, upon any person by reason of participation or nonparticipation in their respective activities.

8.) The salary increase referred to in Paragraph 1 above is made in consideration of the commitment on the part of teachers to perform normal teaching duties on such days other than regular school days as may be designated by the Superintendent during the current school year, and in consideration of all the other conditions herein contained.

9.) In addition to the foregoing, the following understandings between the parties are confirmed:

(a) Proposed formalized procedure for resolving teaching questions or grievances;

(b) Procedure relating to wages, hours and other conditions of employment for teachers;

(c) Leaves of Absence;

(d) Visitation at schools by teacher organization representatives;

(e) Provision for extra compensation to elementary physical education teachers for after school hours activities;

(f) Commitments to reduce class size. Copies of all memoranda relating to such understandings are attached.

10.) Wherever reference is made in this Recapitulation or in any such memoranda to the St. Louis Teachers Association, it is understood to refer also to any successor thereof.

11.) These understandings shall remain in full force and effect until June 30, 1974.

## I. FORMALIZED PROCEDURE FOR RESOLVING TEACHER QUESTIONS OR GRIEVANCES

Should any question or grievance arise involving a teacher's working conditions, employment status or any other matter relating to his or her terms and conditions of employment, the teacher or his representative, as hereinafter provided, may have such question or grievance aired and resolved through the following steps:

1. The teacher or his representative shall have the right to meet with the District Assistant for the school, or the equivalent administrator at other units, at which the teacher is located to resolve the question or grievance.

2. In the event that the matter is not resolved to the satisfaction of the teacher and his representative at the first step, within three (3) working days after submitting the question or grievance, he or his representative shall have the right to meet with the District Superintendent in charge of the district in which the school and the teachers are located to resolve the question or grievance.

3. In the event that the matter is not resolved to the satisfaction of the teacher and his representative through the proceeding steps within five (5) days after

submitting the question or grievance to the District Superintendent, he or she shall have the right to submit the matter to the Board of Education or its designee(s) for resolution. Presentation by the teacher or his representative at this step shall be by a statement in writing of the teacher's grievance or question and the reply of the Board, or its designee(s), will be given in writing within ten (10) days after receipt of the written statement.

4. In the event the matter is not resolved to the satisfaction of the teacher and his representative through the preceding steps then the parties shall have the right to have recourse to such other impartial person or agency for an advisory opinion in the matter as may be mutually agreeable to the parties involved. Should there be any cost involved in such further procedure, it will be divided equally between the parties.

5. In the event that it should become legally possible and permissible, thru legislative enactment of the Missouri Legislature or authoritative judicial determination by the Courts of Missouri, for the Board of Education as a municipal corporation to enter into binding arbitration as a final step in the resolution of such grievances, then, if a grievance is not resolved to the satisfaction of a teacher and his representative the matter shall be submitted to final and binding arbitration before an impartial arbitrator selected by mutual agreement of the parties. If the parties should be unable within ten (10) days after request for such arbitration to select an impartial arbitrator by mutual agreement, then either party shall have the right to request the Federal Mediation and Conciliation Service in Washington for a panel of five (5) arbitrators from whom one will be selected by either side alternately striking the name of an arbitrator from such panel, commencing with the parties seeking such arbitration proceedings, and the last name remaining on such list will be considered selected and agreed upon as such impartial arbitrator. The cost involved of such arbitra-

tion proceedings shall be divided equally between the parties. The foregoing provisions for binding arbitration shall not be understood to preclude a teacher from having recourse to provisions of the Teacher Tenure Statutes of Missouri. Should the teacher elect to pursue such course, the provisions herein for arbitration shall not apply.

Any teacher shall have the right to have the assistance of a representative of his choosing at any step of the procedure outlined above and no teacher shall be required to discuss any grievance if his chosen representative is not present.

No teacher will be prejudiced or discriminated against by the Board of Education or the school administration because of his or her participation in this grievance procedure.

The Board and the administrator will cooperate with the parties involved in its investigation of any grievance and, further will furnish the parties involved with such reasonable and appropriate information as is requested for the processing of any grievance.

Should the investigation or processing of any grievance require that a teacher or his representative be released from his regular assignment, he shall be released, without loss of pay or benefits, as long as no unreasonable interference with the school program results.

All documents, communications, and records dealing with the process of a grievance will be filed separately from the personnel files of the participants.

If a grievance develops at or near the end of the school year, such that sufficient time is not available during the school term to implement fully the grievance procedures set forth, said time limits shall be waived to expedite the processing of the grievance.

As used in the foregoing procedure, "teacher" shall mean either; (1) an individual employee, or (2) a group of employees having the same grievance.

The St. Louis Teachers Association and/or the St. Louis Teachers Union, Local

420, shall have the right to present grievances on behalf of their organizations.

Nothing contained in the foregoing procedure or provisions shall be understood to prevent or preclude the Superintendent from directing or administering teacher personnel in the best interest of the school system, subject to the review provided for therein.

A grievance may be withdrawn at any time without prejudice or precedent.

## II. PROCEDURE RELATING TO WAGES, HOURS AND OTHER CONDITIONS OF EMPLOYMENT FOR TEACHERS

1. The Board of Education or its designee shall meet on request with the St. Louis Teachers Association and the St. Louis Teachers Union, Local 420, through teacher representatives of their own choosing and shall confer on and fully discuss with an intent to reach an understanding on all matters relating to wages, hours, and other conditions of employment for the teachers.

2. Upon the completion of the meetings as provided in step 1 above, the understanding shall be reduced to writing, and presented to the Board of Education for approval.

3. The foregoing procedure is to be followed and applied until such time as a valid and lawful election or other procedure may be utilized to resolve any question of majority status of either organization. In accordance with requests made by both groups, the Board will adopt procedures governing its relations with the majority organization and will recognize the results of a representative election held between January 1, 1974 and October 1, 1974, to determine majority status, unless an earlier date is authorized by law.

## III. LEAVE OF ABSENCE

Any teacher (not more than six (6) at a time) elected or appointed to any full time position in a teacher organization shall be given a leave of absence. He or she shall continue to accrue seniority for salary increments and all other purposes where seniority is a factor. The absence shall not be construed as a break in service for any purpose.

Regularly appointed teachers on such leaves of absence shall be permitted to make their regular contribution to plans requiring such contribution. They shall also be permitted to pay the contributions required or permitted by law to be made by the employee to the Public School Teachers Retirement and Penson [sic] Funds to insure that full credit for retirement purposes is granted for the time spent on such leaves of absence.

Released time will be granted to not more than four (4) employees of the school system as representatives of each of the existing teacher organizations, St. Louis Teachers Association and St. Louis Teachers Union, Local 420, for the purpose of participation in meetings with Board representatives on wages, hours, and terms and conditions of employment.

Nothing contained in the above shall limit leaves pursuant to regulations in existence under Board Rules and Regulations on January 1, 1973.

## IV. VISITATION AT SCHOOLS BY TEACHER ORGANIZATION REPRESENTATIVES

Two representatives per teacher organization will be allowed access to any school for consultation with a teacher or teachers before or after school or during the lunch period or during any other non-teaching times, if such visit does not conflict or interfere with other school or professional activities. A list of all such accredited representatives shall be furnished to the Superintendent's office and kept current by any teacher organization. Such representative on any visit shall report his presence to the school principal upon his entry on the school premises. Upon request of a teacher or group of teachers at a given school to the principal and subject to his concurrence, which shall not be unreasonably withheld, additional representatives (not more than 5

in number) will be allowed access to the school after school hours for consultation.

## V.  COMPENSATION FOR ELEMENTARY PHYSICAL EDUCATION TEACHERS FOR AFTER ACTIVITIES

Elementary physical education teachers who choose to engage in physical education activities after regular school hours will be compensated for such activities at the rate of $418.00 per semester, for which they will be expected to expend a minimum of four hours per week in such activity.  Payment therefor will be included in regular pay checks.  Maintenance of this after school physical education program is understood to depend upon the availability of funds in the school budget for that purpose.

## VI.  CLASS SIZE

The Board will make every attempt to reduce class size and commits itself to working toward the AAA class size standards.  Prior to the 1973–74 school year, the Board will establish a maximum class size limitation.

## VII.  AUTOMOBILE INSURANCE

The Board is currently examining its blanket liability insurance policies to determine whether or not liability coverage is provided for teachers who transport children in their own automobiles in the course and scope of their employment, and it is the intention of the Board to secure such coverage.

BARDGETT, Judge (dissenting).

I respectfully dissent.  The principal opinion holds the Agreement void because it was coerced by an illegal method—a strike in January and February, 1973, by public school teachers in contravention of the no-strike provision of section 105.530, RSMo 1969.  The strike was certainly illegal and it did coerce the original "Recapitulation of Understandings" (Agreement) of February 18, 1973.

No action was ever taken by the Board of Education of St. Louis to declare the Agreement invalid until after June 30, 1974, the expiration date of the Agreement and then only by way of defense to the instant case.

The trial court heard evidence as to the conduct of the parties reference the Agreement over the sixteen months of its existence and held, on the evidence presented, that the Board of Education was estopped from asserting duress because it had ratified the Agreement after the duress ceased.  The court in its memorandum opinion found and held inter alia:

> From the evidence produced on the trial of the instant Cause, it appears that from the time the Recapitulation was entered into on February 19, 1973, until the instant lawsuit no question was raised as to the binding character or legal effect of the Agreement.  To the contrary it appears that in a series of exchanges between plaintiff and defendant the latter treated the document as binding, to-wit: On June 20, 1973, a letter was written wherein proposed language for amending the 'formalized procedure for resolving teacher questions or grievances, to include an appropriate procedure for handling the grievances of substitutes' was used, and again on January 24, 1974, in a letter, recognition was accorded the document in words to the purport, 'as per agreement with these organizations signed on February 19, 1973,' and acknowledging that the agreement was to remain in force through the 1973–74 school year, and finally on April 1, 1974, in a letter from defendant's attorney reference was made to the 'existing memoranda signed in February, 1973, which are to endure until June 30, 1974.'  In fact it appears that effect was given to the document on one occasion (Pam Wallace). The recognition of the binding, valid and enforceable feature of this document by the defendant invokes the general rule as enunciated in 25 Am.Jur.2d Duress (Section 27, page 385):
>
> "As a general rule, one entitled to rescind or repudiate a contract or transaction on the ground of duress should act promptly after the duress has been re-

moved, or he will be deemed to have elected to affirm it."

Again, at Section 28, pages 386, 387, Am. Jur. states:

"Ordinarily, a contract entered into under duress is not considered void but merely voidable, and it is therefore capable of being ratified after the duress is removed. Such ratification results if the party entering into the contract under duress accepts the benefits growing out of it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to avoid it or have it annulled, or if he recognizes its validity by acting upon it." See *Gallon vs. Lloyd Thomas Company* [8 Cir.], 264 F.2d 821; [*State ex rel. American Surety Company vs. Haid* [325 Mo. 949], 30 S.W.2d 100]. Without question defendant not only accepted the agreement or document, but by its subsequent actions ratified it realizing the benefits therefrom for approximately 16 months, and now is estopped, or waiver if you will, to urge its invalidity on the basis of duress.

In my opinion the original "Agreement" was, at the most, voidable at the election of the Board of Education because of the illegal duress of the strike, but, the Board of Education, having operated under the provisions of the "Agreement" without protest for sixteen months, even seeking to amend it during its term, has ratified the Agreement without any illegal coercion and thereby is estopped from now having the Agreement declared invalid.

The only issue decided in the principal opinion is that the Agreement is void because the strike was illegal and, therefore, that is the only issue addressed to in this dissent. In my opinion, the Agreement that resulted from the illegal strike was voidable at the election of the Board of Education but the Board of Education, by its conduct, subsequently ratified the Agreement and, therefore, the Board is estopped from contesting the validity of the Agreement on the basis that it was produced by the illegal strike.